UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:14-CV-488-CRS


SHAD LETHIOT,                                                              Plaintiff,

v.

JB HUNT SHIPPING, a/k/a J.B. Hunt Transport, Inc.                   Defendant.

## MEMORANDUM OPINION AND ORDER

This case was scheduled for a settlement conference on March 9, 2017 at 10:00 a.m. That morning, rather than go forward with a settlement conference, the Court convened a hearing regarding possible violations of its settlement conference order (DN 66 ("Settlement Conference Order")).  Based on the information conveyed at the hearing, the Court cancelled the settlement conference.[1]  In a post-hearing order, the Court stated that "any party may file a motion for sanctions" for violation of the Settlement Conference Order.  (DN 79 at 1.)

Plaintiff Shad Lethiot ("Lethiot") filed a motion for sanctions (DN 80) against Defendant JB Hunt Shipping, a/k/a J.B. Hunt Transport, Inc. ("JB Hunt") and Intervening Plaintiff Family Dollar Stores, Inc. ("Family Dollar").  JB Hunt filed a response (DN 82), and Lethiot replied (DN 86).  Family Dollar also filed a response (DN 87), and Lethiot filed a motion to strike the response as untimely (DN 88).  For the following reasons, the Court will **grant in part** and **deny in part** the motion for sanctions and **deny** the motion to strike.

## BACKGROUND

At the time of the incident underlying this action, Lethiot was employed by Family Dollar as a store manager.  (DN 1-1 at 2.)  On October 1, 2012, in the course of unloading store merchandise from a truck owned by JB Hunt, Lethiot slipped and fell, sustaining serious injuries.

---

[1]          By subsequent order (DN 83), the settlement conference was rescheduled for July 25, 2017.

(*Id.* at 2-3.)  Lethiot alleges that the ground was wet with rain, that a bottle of liquid soap fell to the ground and spilled, causing a slick surface to form, that a piece of cardboard landed on top of that slick surface, and that he slipped on the cardboard.  (*Id.* at 3.)

### 1.  The Settlement Conference Order

On November 29, 2016, the Court entered the Settlement Conference Order, scheduling a settlement conference for March 9, 2017.  The first page of the Settlement Conference Order directs counsel to review the entire order and notifies parties that failure to comply with the order may lead to the imposition of sanctions.  It provides as follows:

> **COUNSEL SHALL REVIEW THE ENTIRETY OF THIS COURT ORDER. COUNSEL SHALL FURTHER SEND A COPY OF THE ORDER AND DISCUSS THE ORDER IN DETAIL WITH HIS OR HER CLIENT(S), AS WELL AS ANY PERSONS REQUIRED TO ATTEND THE SETTLEMENT CONFERENCE (DISCUSSED IN PART II, BELOW). ANYONE WHO FAILS TO COMPLY WITH ANY PROVISION OF THIS COURT ORDER MAY BE SUBJECT TO THE FULL RANGE OF SANCTIONS AUTHORIZED BY LAW.**

(DN 66 at 1.)

Section II of the Settlement Conference Order sets forth the individuals whose presence is required at the settlement conference.

The following individuals ***shall*** be present in person at the settlement conference.

1.  <u>Lead counsel</u>.  Counsel who will actually try the case shall attend in person.

2.  <u>Each natural person party</u>.  Each natural person shall attend in person, regardless of his or her settlement position and/or whether he or she is covered by an applicable insurance policy or otherwise indemnified.

3.  <u>Each entity party</u>.  Each entity party (*e.g.*, corporation, LLC, government, etc.) shall attend in person through an authorized party representative regardless of its settlement position and/or whether it is covered by an applicable insurance policy or otherwise indemnified.

The party representative must have *full settlement authority*.  The party representative must be *fully authorized* to approve a settlement and must have the authority to *change* the party's valuation of the case and the party's settlement posture *during the course of the settlement conference*.  A party violates this Order by, among other things, sending to the settlement conference a representative who has a "cap" or limit to his or her authority, or who requires consultation with or permission from anyone not present in person at the settlement conference to make or respond to an offer or demand.  *See Lockhart v. Patel*, 115 F.R.D. 44 (E.D. Ky. 1987).  A representative who must "call the home office" for permission to accept an offer does *not* have full settlement authority within the meaning of this Order.

4.    <u>Insurance carrier representative, if applicable</u>.    An authorized representative of any insurance carrier which may be liable for all or part of a possible judgment shall attend in person.  *See* Fed. R. Civ. P. 26(a)(1)(iv).

The insurance carrier representative must have *full settlement authority*.  The insurance carrier representative must be *fully authorized* to approve a settlement and must have the authority to *change* the insurer's valuation of the case and the carrier's settlement posture *during the course of the settlement conference*.  A party and/or insurance carrier violates this Order by sending to the settlement conference an insurance carrier representative who has a "cap" or limit to his or her authority, or who requires consultation with or permission from anyone not present in person at the settlement conference to make or respond to an offer or demand.  *See Lockhart v. Patel*, 115 F.R.D. 44 (E.D. Ky. 1987).  A representative who must "call the home office" for permission to accept an offer does *not* have full settlement authority within the meaning of this Order.

(*Id.* at 2.)

Section IV of the Settlement Conference Order provides a mechanism for parties to request a variance from the order's requirements.  It provides as follows:

3.    <u>Variance from this Order</u>.  If any party believes that special circumstances justify a variance from any aspect of this Order, counsel for that party must contact the Magistrate Judge's Chambers no later than *fourteen (14) days* before the date of the scheduled settlement conference to request such a variance.  The Magistrate Judge will only grant a variance upon a showing of specific facts constituting exceptional circumstances.  No such variance will be effective until it has been approved by the Court.

(*Id.* at 4.)

3

**2. The Hearing**

On March 9, 2017, Lethiot and his counsel, S. Coy Travis ("Travis") appeared in person for the settlement conference. Counsel Thomas Donkin ("Donkin") appeared for Family Dollar. A party representative for JB Hunt, Erin Campbell ("Campbell"), appeared with counsel Michael Hammond ("Hammond"). Attorney Robert Florio ("Florio"), who is Lethiot's former counsel in this matter and asserts that he holds an attorney's lien, also appeared. Shortly after these individuals arrived, the Court convened a hearing due to its concerns regarding potential violations of the Settlement Conference Order. The hearing was conducted on the record and an official transcript was produced (DN 84).

During the hearing, the following information relevant to the motion for sanctions was elucidated on the record:

- **<u>Information Regarding Lethiot</u>:**

  - Lethiot and his current counsel, Travis, do not believe that there are any Medicaid liens in existence that relate to this action. Florio, Lethiot's former counsel, stated on the record that he requested a conditional lien letter from Medicaid, but he never received one. Travis stated that he has not received a conditional lien letter from Medicaid, and he did not find one in the case file that he inherited from Florio. (*Id.* at 8-14.)

  - Lethiot drove to the courthouse in Louisville, Kentucky from his home near Carbondale, Illinois, a drive of approximately four-and-a-half hours. Lethiot had to stop multiple times during the drive because of pain which he ascribes to the injuries he sustained in the fall described above. He drove to Louisville the night before the settlement conference, stayed in a hotel, and had a hotel room booked for the night of the settlement conference. (*Id.* at 52-53.)

- **<u>Information Regarding JB Hunt</u>:**

  - Hammond, JB Hunt's counsel, confirmed on the record that he read the entirety of the Settlement Conference Order, forwarded the Order to his client, Campbell, and asked her to review it. He did not recall whether he and Campbell discussed the Order. Campbell stated that she did discuss the Order with Hammond. (*Id.* at 14-15.)

4

- Hammond stated that JB Hunt has an insurance policy that might apply to this case, but he believed that the self-insured retention ("SIR") amount exceeds the amount for which JB Hunt believes it would settle this case (or pay in damages).  Therefore, Hammond believed that "the insurance would not apply" for purposes of settling the case.  (*Id.* at 15.)

- Hammond stated that he did not recall whether JB Hunt, in the course of making initial disclosures or in discovery, disclosed or produced the insurance policy, including the declarations page and any SIR, to Lethiot's counsel.  He stated that JB Hunt would supplement its disclosures or responses if required.  (*Id.* at 33-34.)

- Later in the hearing, Travis informed the Court that in JB Hunt's March 6, 2015 responses to Lethiot's discovery requests, JB Hunt stated that it is self-insured; it did not mention that it was self-insured only to a certain amount and insured by a third party above that amount.[2]  (*Id.* at 31-32.)

- Hammond acknowledged that JB Hunt needed to supplement its response to the insurance-related interrogatory.  He stated that late in the previous week or on the date of the settlement conference, he received additional document production from both Lethiot and Family Dollar.  He stated that until he reviewed the documents produced that day, he could not say whether the information contained therein would lead him to change his valuation of the case.  (*Id.* at 34, 41-42.)

- Hammond agreed that based on the language of Rule 26(a)(1), JB Hunt's relevancy objection to producing insurance-related information was "utterly baseless."  (*Id.* at 35-36 (quoting Fed. R. Civ. P. 26(a)(1)(iv) ("A party must, without awaiting a discovery request, provide to the other parties [ . . . ] any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.").)[3]

- Hammond and Campbell each stated that Campbell had "full settlement authority" within the meaning of the Settlement Conference Order (DN 66 at 2).  Campbell stated that there was no settlement figure above which she could not settle the case without getting approval from someone else.  (DN 84 at 18.)

---

[2]     In addition, in response to an interrogatory seeking information regarding any applicable insurance policy or agreement, the policy limits, and related information, JB Hunt objected to providing such information on the bases of irrelevance, inadmissibility, and the interrogatory not being reasonably calculated to lead to the discovery of admissible evidence.  (DN 84 at 32-33; *see* DN 80-1 at 3-4 ("Objection, the interrogatory seeks information which is irrelevant, inadmissible, and not reasonably calculated to lead to the discovery of any relevant or admissible evidence.  Without waiving this objection, Defendant states that it is self[-]insured for the damages allegedly sustained herein.").)

[3]     JB Hunt's previous counsel completed and served the Rule 26 initial disclosures.  Hammond signed the written discovery responses.  (DN 84 at 40-41.)

- Hammond agreed that there is an insurance carrier for JB Hunt that falls within the Settlement Conference Order language describing insurance carriers that must attend the settlement conference. (DN 84 at 18-19; DN 66 at 2-3 ("An authorized representative of any insurance company which may be liable for all or part of a possible judgment shall attend in person.").)  No insurance carrier representative appeared for the settlement conference. (DN 84 at 19.)

- As of the date of the settlement conference, neither Lethiot nor Family Dollar knew the amount at which JB Hunt's SIR would be exhausted and the insurance carrier would become involved. (*Id.* at 39-40.)

- JB Hunt did not contact chambers to request a variance from the Settlement Conference Order.  The Court did not grant a variance from the Order. (*Id.* at 19-20.)

- Hammond acknowledged the Settlement Conference Order language that provides, "Anyone who fails to comply with any provision of this court order may be subject to the full range of sanctions authorized by law." (*Id.* at 21.)

- **Information Regarding Family Dollar:**

  - Donkin, Family Dollar's counsel, confirmed on the record that he read the entirety of the Settlement Conference Order, forwarded the Order to his client, specifically newly-appointed risk manager Ryan Johnson ("Johnson") and Johnson's assistant.  He stated that he and Johnson discussed the Order during a telephone conference the week before the settlement conference. (DN 84 at 21.)

  - Donkin stated that he is aware of the Settlement Conference Order language that provides, "Anyone who fails to comply with any provision of this court order may be subject to the full range of sanctions authorized by law." (*Id.* at 22.)

  - Donkin stated that there is an insurance carrier involved in this case as it relates to Family Dollar.  He stated that the third-party administrator is Sedgwick CMS, and that he did not know who the insurance carrier is. (*Id.* at 22.)  Donkin acknowledged that no insurance carrier representative was present for the settlement conference. (*Id.* at 26.)

  - Donkin stated that Family Dollar is the decision-maker as to whether to settle its claim and for what amount. (*Id.* at 22-23.)

  - Donkin acknowledged that he did not have the authority to change his client's valuation of the case and his client's settlement posture during the course of the settlement conference. (*Id.* at 27 (discussing DN 66 at 2).)  There was a dollar figure above or below which Donkin was not authorized to settle the case without approval from Johnson, whose office is in Richmond, Virginia. (DN 84 at 23, 27.)

- It was Johnson's own decision not to attend the settlement conference. That decision was consistent with Donkin's advice "based on [Donkin's] interpretation of the order." (*Id.* at 24.) Donkin interpreted the Settlement Conference Order to provide that Johnson could authorize Donkin to attend the settlement conference on behalf of Family Dollar. (*Id.* at 25.)

- Donkin did not believe Johnson was available by phone on the date of the settlement conference. Donkin told Johnson that he need not be available. Donkin believed that Johnson was at a Family Dollar office but not in his personal office. (*Id.* at 27-28.)

- Family Dollar did not contact chambers to request a variance from the Settlement Conference Order. The Court did not grant a variance from the Order. (*Id.* at 23-24.)

- **Ability to Proceed with Settlement Conference:**

  - Lethiot's position was that, based on the information brought forth during the hearing, it would be "practically impossible" to settle the case on that date. (DN 84 at 37-38.)

  - JB Hunt's position was that it would be difficult to settle the case that day because of the recently-produced discovery from Lethiot and Family Dollar, and the possible impact of that discovery on JB Hunt's valuation of the case. (*Id.* at 41-43.)

  - Donkin acknowledged that Family Dollar's production was "incredibly late," which he blamed in large part on his firm having taken over the case from another firm. Some documents were still missing. Travis also acknowledged that he served late discovery responses, including medical treatment records that were not disclosed previously. (*Id.* at 44-45.) However, Family Dollar took the position that it would be fruitful for everyone to remain and attempt to conduct settlement negotiations, as it would allow the parties to get an idea of each other's positions. (*Id.* at 44.)

  - The Court concluded that it would not be fruitful to go forward with a settlement conference on that date. First, it would be inefficient due to uncertainty about a number of discovery-related matters. Second, it would not be an effective use of the Court's resources and those of the attorneys and parties present. Finally, the Court wished to avoid during the settlement conference any perception of prejudice to JB Hunt and/or Family Dollar based on the discussion with the Court of their violations of the Settlement Conference Order. (*Id.* at 47-50.)

### 3. Briefing on the Motion for Sanctions

In his motion for sanctions (DN 80), Lethiot provides a summary of the March 9, 2017 hearing. Lethiot's summary is consistent with the Court's review of the transcript and the above

list setting forth the information elucidated at the hearing. Lethiot argues that both JB Hunt and Family Dollar violated the Settlement Conference Order willfully and in bad faith.

First, Lethiot argues that JB Hunt violated the Settlement Conference Order by failing to bring to the settlement conference a representative of its insurance carrier and failing to disclose to Lethiot the existence of any insurance carrier. Lethiot argues that JB Hunt did not include such information in its initial disclosures, in violation of Rule 26. (DN 80 at 10.) He further argues that in response to Lethiot's interrogatory on the matter -- which Lethiot served some two years before the settlement conference -- JB Hunt raised a baseless relevancy objection and then answered in a way that indicated that there was no insurance policy applicable to this case. (*Id.*) Second, Lethiot argues that Family Dollar violated the Settlement Conference order by sending only Donkin, who had a cap on his authority and had no power to revalue the case in the course of the settlement conference. (*Id.* at 11-12.)

Lethiot asks the Court to sanction both JB Hunt and Family Dollar for what he describes as willful or egregious violations of the Settlement Conference Order. He suggests that the Court strike JB Hunt's answer and enter default judgment against it for its failure -- for years -- to disclose the existence of an insurance carrier which may be liable for satisfaction of a judgment in this case. (*Id.* at 12.) Lethiot asks the Court to dismiss, with prejudice, Family Dollar's intervening complaint. (*Id.* at 13.) Alternatively, Lethiot proposes an order that would prohibit JB Hunt from opposing Lethiot's claim for injury, as to liability, damages, or both, or to preclude JB Hunt from supporting numerous defenses. (*Id.*) He also asks that the Court preclude Family Dollar from offering support for its claim that it had a lien against any personal recovery by Lethiot from JB Hunt by virtue of any workers' compensation benefits paid or payable to

8

Lethiot.  (*Id.*)  As another option, Lethiot proposes designating certain facts as established, such as JB Hunt's liability for Lethiot's injury, leaving damages as the issue for trial.  (*Id.*)  Finally, Lethiot asks that JB Hunt and Family Dollar be compelled to reimburse him for his travel expenses (including car rental, gas, hotel stay, and food) and for his attorney's fees and expenses incurred in relation to the settlement conference.  (*Id.* at 14.)

JB Hunt states that its failure to bring an insurance company representative to the settlement conference "occurred because of the good faith (although erroneous) belief that any settlement proceeds would be paid by JB Hunt rather than an insurer," a "belief that was fostered by the failure of [Lethiot] and Family Dollar" to comply with Rule 26 or timely answer discovery requests.  (DN 82 at 7.) JB Hunt argues that neither Lethiot nor Family Dollar produced in their initial disclosures a computation of each category of damages claimed or the materials on which such computation was based.  (*Id.* at 1-2 (citing Fed. R. Civ. P. 26(a)(1)(A)(iii)).)  It also argues that neither of the other parties has supplemented discovery responses regarding "the apparent completion of medical treatment by [Lethiot] at the conclusion of the workers' compensation action."  (*Id.* at 2.)  JB Hunt points out that on the morning of the settlement conference, Family Dollar provided it with over 1,000 pages of responsive documents related to medical treatment and expenses, and Lethiot provided documents related to workers' compensation.  (*Id.*)  JB Hunt argues that Lethiot and Family Dollar's actions violated Rule 26 and the Court's original scheduling order (DN 12) and made it impossible for JB Hunt to accurately value the case and determine whether it would be covered by JB Hunt's SIR or its insurer.  (DN 82 at 4.)  JB Hunt points out that its counsel sent two letters -- in January 2017 and February 2017 -- to Lethiot's counsel, requesting that Lethiot respond to its discovery requests

9

and noting that JB Hunt needed the responses in order to prepare for the settlement conference. (DN 82-4.)   Additionally, JB Hunt argues that Lethiot has failed to produce information regarding any existing liens. (DN 82 at 5.)

Lethiot filed a reply (DN 86).  Lethiot argues that he produced all that Rule 26 requires, and more, citing and attaching as an exhibit his responses to JB Hunt's written discovery requests.  (*Id.* at 2-3 (citing DN 86-1).)  Lethiot states that in 2014, he provided JB Hunt with releases allowing it to obtain information related to his medical expenses, his workers' compensation claim, and his past employment, including earned wages.  (DN 86 at 4.)  Lethiot argues that the only element of damages left unresolved in 2014 was pain and suffering, which is a subjective and changing amount.  (*Id.*)  Lethiot states that while his counsel takes responsibility for the delay in production of discovery responses, the delay did not cause JB Hunt any prejudice, arguing that with the exception of an objection to two discovery requests for exceeding the acceptable number of interrogatories, he responded in full to JB Hunt's supplemental discovery requests, including information regarding health insurance benefits for which Lethiot did not qualify and the seeming absence of a Medicaid lien.  (*Id.* at 6-7.)  Lethiot argues that JB Hunt's position is merely an attempt to justify its own violations of the Settlement Conference Order by slinging mud at Lethiot.

Family Dollar also filed a response to the motion for sanctions (DN 87).  Family Dollar acknowledges that it is "woefully behind" in responding to discovery requests.  (*Id.* at 1.)  It states that this case, along with a number of other cases, came to current counsel from another attorney and that current counsel merely received a box containing thousands of pages of unsorted documents and no mention of the March 9, 2017 settlement conference.  (*Id.*)  Family

Dollar argues that the sanctions that Lethiot seeks far exceed the value of any injury to him as a result of the failed settlement conference.  (*Id.* at 1-2.)  Family Dollar argues that whereas the purpose of sanctions is to deter future "litigation abuse," imposition of the sanctions that Lethiot seeks would be the equivalent of a plaintiff's verdict.  (*Id.* at 2.)  Family Dollar asks the Court to deny the motion for sanctions because all of the parties were unprepared for the settlement conference, and allow them to start anew with a rescheduled settlement conference.  Rather than file a reply, Lethiot filed a motion to strike Family Dollar's response for untimeliness (DN 88).  The motion to strike is addressed in the Discussion section below.

## DISCUSSION

### 1.  The Motion to Strike

In his motion to strike Family Dollar's response, Lethiot argues that without seeking leave of Court, Family Dollar filed the response four days after the deadline for responses to the motion for sanctions.  (DN 88 at 1.)  Lethiot is correct that Family Dollar's response was untimely.  Local Rule 7.1(c) provides that responses must be filed within 21 days of service of the motion.  LR 7.1(c).  The Rule further provides that failure to timely respond to a motion may be grounds for granting the motion.  *Id.*  The motion for sanctions was filed on March 17, 2017. Responses to that motion were required to be filed no later than Friday, April 7, 2017.  Family Dollar's response was filed on Tuesday, April 11, 2017, four days after the deadline.  Family Dollar did not seek leave of Court to file its response beyond the deadline.

Notwithstanding the foregoing, the Court will deny the motion to strike.  While the four-day delay is perplexing in the context of this case, in which the tardiness comes from a party that had already admitted violating a Court order and that was facing a motion for sanctions, the

11

delay is immaterial under the circumstances.  The substantive portion of Family Dollar's response is less than two pages in length and provides little new information.  Lethiot could have filed a reply -- or tendered a reply with his motion to strike -- but he did not.  This suggests that Lethiot did not believe the response merited a reply.  The four-day delay did not cause any prejudice to Lethiot or lead to any delay for or inefficient use of resources by the Court. Accordingly, the Court denies the motion to strike (DN 88).

**2. The Motion for Sanctions**

a. Legal Standard

Under Rule 16 of the Federal Rules of Civil Procedure, the Court may order a "party or its representative [to] be present or reasonably available by other means to consider possible settlement."  Fed. R. Civ. P. 16(c)(1).  A district court does not abuse its authority in ordering a corporate representative to attend a settlement conference in person.  *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 655 (7th Cir. 1989) (en banc); *see also In re Atlantic Pipe Corp.*, 304 F.3d 135, 143 (1st Cir. 2002); *U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2nd Cir. 1998); *In Re Novak*, 932 F.2d 1397, 1407 (11th Cir. 1991); *cf. In re LaMarre*, 494 F.2d 753, 756 (6th Cir. 1974) (holding that a district court does not abuse its discretion in compelling a claims manager to attend a pretrial conference); *but see In re Stone*, 986 F.2d 898 903 (5th Cir. 1993) (holding that a district court abuses its discretion in invoking inherent authority to require attendance at settlement conference).

If a party fails to obey a pretrial order, such as an order to attend a settlement conference, or to appear at a pretrial conference, the Court may, upon the motion of a party or *sua sponte*,

sanction that party.  Fed. R. Civ. P. 16(f)(1)(A)-(C).  Potential sanctions for failing to obey a

pretrial order or failing to appear at a pretrial conference include:

> (ii) prohibiting the disobedient party from supporting or opposing designated
> claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any pretrial order except an
> order to submit to a physical or mental examination.

Fed. R. Civ. P. 16(f)(1) (cross-referencing available sanctions under Fed. R. Civ. P.

37(b)(2)(A)(ii)-(vii)).  Further, "[i]nstead of or in addition to any other sanction, the court must

order the party, its attorney, or both to pay the reasonable expenses -- including attorney's fees --

incurred because of any noncompliance with this rule, unless the noncompliance was

substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P.

16(f)(2).

     b.  <u>JB Hunt Violated the Settlement Conference Order.</u>

     Lethiot argues that JB Hunt violated the Settlement Conference Order by failing to

disclose to him the existence of an insurance carrier and by failing to bring a representative of its

insurance carrier to the settlement conference.  The Settlement Conference Order states that an

"authorized representative of any insurance carrier which may be liable for all or part of a

possible judgment shall attend in person."  (DN 66 at 2 (citing Fed. R. Civ. P. 26(a)(1)(iv)).)  In

this case, JB Hunt concedes that its insurance carrier did not attend the settlement conference.

(DN 84 at 15, 19.)  Additionally, at the March 9, 2017 hearing, JB Hunt's counsel acknowledged

that JB Hunt needed to supplement its answer to Lethiot's interrogatory regarding its applicable

insurance policy or policies.  (*Id.* at 32-33.)  In an on-the-record discussion with the Court,

Hammond agreed that his client should have produced information regarding insurance in its initial disclosures and in response to Lethiot's discovery requests, and that JB Hunt's relevancy objection to Lethiot's interrogatory was "utterly baseless." (*Id.* at 32-33, 35-36.) Further, JB Hunt concedes that as of the date of the settlement conference, neither Lethiot nor Family Dollar knew the amount at which JB Hunt's SIR would be exhausted and the insurance carrier would become involved. (*Id.* at 39-40.) Finally, as JB Hunt also acknowledges, it did not seek or receive a variance from the Settlement Conference Order's requirements. (*Id.* at 19-20.) Based on the foregoing, the Court finds that JB Hunt violated Part II, Paragraph 4 of the Settlement Conference Order. (DN 66 at 2-3.)

c. Family Dollar Violated the Settlement Conference Order.

Lethiot argues that Family Dollar violated the Settlement Conference Order by failing to bring a party representative to the settlement conference. Instead, he argues, only Family Dollar's attorney was in attendance, and the attorney's settlement authority was capped; he was not able to revalue the case in the course of the settlement conference without the approval of a Family Dollar employee who was not present.

The Settlement Conference Order requires Family Dollar, as an entity party, to "attend in person through an authorized *party* representative." (DN 66 at 2 (emphasis added).) In the next paragraph, the Settlement Conference Order twice reiterates the requirement of sending a party representative. (*See, e.g., id.* ("The party representative must have ***full settlement authority***. The party representative must be ***fully authorized*** to approve a settlement and must have the authority to ***change*** the party's valuation of the case and the party's settlement posture . . . .").) A party representative is an individual who is employed by the entity party. *See, e.g., Heileman*,

871 F.3d at 653 ("In our view, 'authority to settle' . . . means that the 'corporate representative' attending the pretrial conference was required to hold a position within the corporate entity allowing him to speak definitively and to commit the corporation to a particular position in the litigation.").

Donkin stated on the record on March 9, 2017 that he interpreted the Settlement Conference Order to provide that Family Dollar could authorize him to attend the settlement conference on its behalf, and that the party representative who otherwise would have attended, Johnson, decided not to attend the conference consistent with Donkin's advice. (DN 84 at 25, 27.) Further, Donkin acknowledged that he did not have authority to change Family Dollar's valuation of the case and its settlement posture during the course of the settlement conference. (*Id.* at 22-23.) He could not settle the case for a dollar figure below a certain amount without approval from Johnson, who he believed was at Family Dollar's offices in Richmond, Virginia, but not available by phone on the date of the settlement conference. (*Id.* at 23, 27, 28.) Further, as Family Dollar acknowledged at the hearing, it did not seek or receive a variance from the Settlement Conference Order. (*Id.* at 23-24.)

An entity party's attorney is *not* a party representative. This should be clear as a matter of common sense and from the structure of the Settlement Conference Order, which provides in separate paragraphs that a party's lead counsel *and* a party representative (among others) shall attend. (*See* DN 66 at 2.) The Court requires the attendance of a party representative for several reasons, including to ensure that the party's interests are represented. Even the most zealous legal advocate is not vested in the outcome of a settlement conference in the same way that an employee of the entity would be. Moreover, it is critical for a party representative to attend so

that he or she may change the party's valuation of the case and settlement posture during the course of the settlement conference. This cannot be accomplished by an attorney who is not employed by the entity party. The inadequacy of an attorney-in-place-of-party-representative arrangement is clear from this case. Donkin's settlement authority was capped; he did not have authority to change Family Dollar's valuation of the case during the course of the settlement conference without calling the home office; and the person whose approval he would have required was -- by Donkin's own statement on the record -- unavailable by phone on the date of the settlement conference. Moreover, Family Dollar owed it to its former employee, Lethiot, who suffered life-long serious injury, and for whom traveling to the settlement conference caused physical pain and monetary expense, to send a party representative, an actual employee of Family Dollar.

Additionally, as is set forth above in relation to JB Hunt, the Settlement Conference Order provides that an "authorized representative of any insurance carrier which may be liable for all or part of a possible judgment shall attend in person." (DN 66 at 2 (citing Fed. R. Civ. P. 26(a)(1)(iv)).) During the March 9, 2017 hearing, Donkin conceded that there is an insurance carrier related to Family Dollar's role in this action, and that no insurance carrier representative was present for the settlement conference. (DN 84 at 22, 24.) He stated that the third-party administrator on the applicable policy is Sedgwick CMS, and that he did not know who the insurance carrier is. (*Id.* at 22.) Neither a representative of Sedgwick CMS nor a representative of the as yet unidentified carrier appeared for the settlement conference. In its response to the motion for sanctions (DN 87), Family Dollar does not address the nonappearance of an insurance carrier representative.

Perhaps most baffling, Donkin stated on the record that after reviewing the Settlement Conference Order, he advised Family Dollar that it need not send a party representative and that he did not seek to have a representative of Sedgwick CMS attend.[4]   The Court is at a loss as to how the language of the Settlement Conference Order could be clearer regarding whose attendance is required.   Donkin's interpretation of the Order is indefensible in light of the plain language of the Order.   It is worth noting that during the March 9, 2017 hearing, Donkin stated that Family Dollar, not the insurance carrier, is the decision-maker regarding settlement of this case.   Nevertheless, even accepting that statement as true, Family Dollar could have sought a variance from the Settlement Conference Order's requirement that an insurance carrier representative attend.   It did not do so.   If counsel has any questions or confusion regarding the Settlement Conference Order, the Order itself provides a mechanism to seek a variance -- or simply ask for clarification -- as to its terms.   Instead, in this case, Family Dollar substituted its own judgment for that of the Court.

Based on the foregoing, the Court finds that Family Dollar violated Part II, Paragraph 3 of the Settlement Conference Order, regarding entity party representatives, as well as Part II, Paragraph 4, regarding insurance carrier representatives.   (DN 66 at 2-3.)

d.   Imposition of Sanctions Against JB Hunt

Having concluded herein that JB Hunt violated the Settlement Conference Order, the issue now before the Court is whether it should sanction JB Hunt for its conduct.   Both at the March 9, 2017 hearing and in its response to the motion for sanctions, JB Hunt argued that it could not effectively value the case because both Lethiot and Family Dollar failed to make

---

[4]        Further, it appears to the Court that Donkin did not even attempt to determine the identity of the relevant insurance carrier.

adequate Rule 26(a) initial disclosures or respond in full to JB Hunt's discovery requests prior to the date of the settlement conference. JB Hunt contends that without the ability to review a full production of materials regarding Lethiot and Family Dollar's computation of damages claimed or Lethiot's medical and workers' compensation records, it was unable to value the case prior to the settlement conference, and therefore, it could not determine in advance of the conference whether a representative of its insurance carrier should be present. The Court notes that JB Hunt's counsel contacted Lethiot's counsel to request discovery responses, specifically stating that JB Hunt needed the responses in order to prepare for the settlement conference. (*See* DN 82 at 4-5; DN 82-4.) In reply, Lethiot argues that JB Hunt's position is mere mud-slinging. Lethiot states that while he did produce certain documents on the date of the settlement conference, prior to that, he adhered to his Rule 26 obligations, responded in full to JB Hunt's written discovery requests -- with the exception of two objections for exceeding the allowable number of interrogatories -- and he provided JB Hunt with releases to allow it to obtain his medical, employment, and workers' compensation records. (DN 86 at 2-4.)

JB Hunt violated a crucial provision of the Settlement Conference Order -- the requirement that an insurance carrier representative attend the settlement conference. Moreover, JB Hunt failed to provide either Lethiot or Family Dollar with information to which they were entitled regarding JB Hunt's insurance coverage. Under these circumstances, the Court concludes that JB Hunt's conduct warrants the imposition of sanctions. An award of sanctions is in accord with other orders of this Court. *See, e.g.*, *Ivan Ware & Son, Inc. v. Delta Aliraq*, *Inc.*, Civil Action No. 3:10-CV-484-CRS-CHL, 2016 WL 8064365, at *6 (W.D. Ky. Dec. 5, 2016), *report and recommendation adopted*, Civil Action No. 3:10-CV-00484-CRS, 2017 WL 379459

18

(W.D. Ky. Jan. 26, 2017) (recommending sanctions of $2,500 against individual defendant for failing to appear at a settlement conference); *Holly v. UPS Supply Chain Solutions, Inc.,* Civil Action No. 3:13-cv-980-DJH-CHL, 2015 WL 4776904, at *3-*4 (W.D. Ky. Aug. 12, 2015) (overruling objections to sanctions imposed on defendants for sending corporate representative without requisite settlement authority to a settlement conference).

Moreover, Lethiot exerted significant effort to prepare for and attend the settlement conference in person.  Lethiot suffers from lasting, painful injuries, which he alleges stem from the accident underlying this case.  He drove to the courthouse in Louisville, Kentucky, from his home near Carbondale, Illinois, in order to participate in the settlement conference.  In the course of a drive of at least four-and-a-half hours, Lethiot was forced to stop his vehicle multiple times because of pain.  In addition, Lethiot paid for a hotel room in Louisville for the night before the settlement conference *and*, because he was uncertain how long the settlement conference would last, he also reserved a hotel room for the night following the settlement conference.  Despite this physical pain and financial expenditure, Lethiot was left to go home without *any* progress toward resolving this case.   He will have to do it all over again when the settlement conference reconvenes.   Additionally, Lethiot's counsel prepared for the settlement conference, set aside time to attend the conference, and spent a meaningful portion of his day attending the would-be conference and participating in the hearing.  In short, both Lethiot and his attorney, Travis, were present for and prepared to participate in the settlement conference.  To say that Lethiot was prejudiced when the Court had to cancel the settlement conference due to JB Hunt and Family Dollar's conduct would be an understatement.

The Court agrees with Lethiot that JB Hunt's response to the motion for sanctions is too little, too late.  At the March 9, 2017 hearing, JB Hunt's counsel appeared to take responsibility for his failures with respect to the insurance carrier.  By contrast, JB Hunt's written response (DN 82) would have the Court believe that Lethiot and Family Dollar's discovery-related failures were solely responsible for the failed settlement conference.  One need only review the hearing transcript to see that this argument is out of touch with reality.  Lethiot argues credibly in his reply that he complied with his Rule 26 initial disclosure obligations, responded to JB Hunt's discovery requests, and provided releases to allow JB Hunt to obtain information regarding his medical expenses, workers' compensation claim, and past employment.  To the extent that some question remains regarding the amount of claimed pain and suffering damages, Lethiot argues reasonably that such a figure is subjective and may change over time.  Lethiot's counsel responded candidly to the Court's questions at the March 9, 2017 hearing, even volunteering information regarding his client's discovery responses when not specifically asked by the Court.  This candor continues in Lethiot's motion for sanctions and reply.  The Court finds that Lethiot's current counsel has endeavored to fully answer JB Hunt's questions regarding the existence of any Medicaid lien and any other insurance benefits that Lethiot may have received.  Finally, the Court notes that if JB Hunt believed that it had insufficient information from Lethiot (or Family Dollar) to prepare for the March 9, 2017 settlement conference, it could -- and should -- have brought this to the Court's attention.  It did not do so.  Accordingly, the Court had no reason to believe, prior to that date, that discovery-related issues might exist that could impede the parties' ability to settle the case.  Based on the foregoing, the Court rejects JB Hunt's argument that Lethiot's conduct militates against the imposition of sanctions.

e.  Imposition of Sanctions Against Family Dollar

Having concluded herein that Family Dollar violated the Settlement Conference Order, the Court must also determine whether it should sanction Family Dollar for its conduct.  Perhaps refreshingly, both during the March 9, 2017 hearing and in its belatedly-filed response, Family Dollar admitted its failures to bring a party representative or an insurance carrier representative to the settlement conference.  Family Dollar also admitted being "woefully behind" in responding to discovery requests.  Despite these admissions, Family Dollar argues that sanctions would be inappropriate based on Lethiot's own failure to fully prepare for the settlement conference.  It also blames its original counsel for failing to maintain an organized file, which, it says, led to its inadequate preparation for the settlement conference.  (DN 87 at 1.)

Family Dollar's arguments are even easier to dismiss than JB Hunt's arguments.  As is discussed above, while Lethiot conceded that he produced certain materials on the eve of the settlement conference, such delay pales in comparison to Family Dollar's conduct.  Family Dollar violated the Settlement Conference Order in two significant ways.  In short, the Settlement Conference Order *required* Family Dollar to bring a party representative *and* an insurance carrier representative to the settlement conference.  Family Dollar did neither.  Incredibly, Family Dollar's attorney advised it that this was acceptable.  The same attorney could not even identify the missing insurance carrier.  Family Dollar's conduct was egregious.  Lethiot's -- or JB Hunt's -- actions do not justify or somehow override Family Dollar's conduct.  To decline to impose sanctions based on this position would undermine the effect of an order of this Court.

21

Finally, the Court notes once again that neither Family Dollar nor JB Hunt sought a variance from the Settlement Conference Order or moved for the continuation of the settlement conference. If either of those parties believed that a settlement conference would not be fruitful due to another party's conduct, it could have filed a motion to continue or sought an *ex parte* conference with the Court to discuss the relevant issue(s). Instead, both Family Dollar and JB Hunt chose to attend the settlement conference from significantly unprepared postures. Based on the foregoing, the Court will impose sanctions on Family Dollar.

      f.   <u>Type of Sanctions</u>

Rule 16(f) of the Federal Rules of Civil Procedure permits the Court to impose a full range of sanctions for a violation of a pretrial order or failure to appear for a pretrial conference. *See* Fed. R. Civ. P. 16(f)(1)(A)-(C), 37(b)(2)(A)(ii)-(vii). In this case, Lethiot asks the Court to impose draconian sanctions on JB Hunt and Family Dollar: he requests that the Court strike JB Hunt's answer and enter default judgment against it, as well as dismiss with prejudice Family Dollar's intervening complaint. (DN 80 at 12-13.) Lethiot also provides less severe suggestions, including designating certain facts, such as JB Hunt's liability for his injuries, as established or prohibiting JB Hunt or Family Dollar from supporting their defenses and claims, respectively. (*Id.* at 13.) Finally, Lethiot asks that the Court compel JB Hunt and Family Dollar to reimburse him for his travel expenses and attorney's fees and expenses incurred in relation to the settlement conference. (*Id.* at 14.)

As is discussed at length herein, the Settlement Conference Order clearly puts the parties on notice that failure to comply with its provisions may subject them to the full range of sanctions authorized by law. (DN 66 at 1.) Moreover, the Settlement Conference Order twice

cites *Lockhart v. Patel*, 115 F.R.D. 44 (E.D. Ky. 1987).  (DN 66 at 2, 3.)  In *Lockhart*, the district court struck a defendant's pleadings and declared him in default following his insurance carrier's failure to send an appropriate representative to a settlement conference.  *Lockart*, 115 F.R.D. at 45; *see also Empire Inc. v. Wal-Mart Stores, Inc.*, 188 F.R.D. 478 (E.D. Ky. 1999) (awarding plaintiff attorney's fees and sanctioning Wal-Mart for $5,071 due to its "unilateral[] determin[ation] that it would not be necessary to have a representative present and informed the Court of this decision").  Through the lens of *Lockhart* and the clear language of the Settlement Conference Order, entry of default against JB Hunt or dismissal with prejudice of Family Dollar's intervening complaint would not be out of bounds.

It seems clear from the hearing transcript that all parties have -- to varying degrees -- failed to satisfy their initial disclosure and/or discovery obligations.  However, counsel for JB Hunt and Family Dollar spoke candidly at the March 9, 2017 hearing, taking responsibility for their Settlement Conference Order violations and discovery shortcomings (notwithstanding JB Hunt having taken a different tack in its response to the motion for sanctions).  JB Hunt and Family Dollar have also taken actions since the date of the failed settlement conference that signify to the Court their understanding of their wrongdoing and desire to participate in the renewed settlement conference (set for July 25, 2017) as contemplated by the Settlement Conference Order.  For example, Family Dollar notified the Court that it served supplemental discovery responses (DN 94).  Additionally, both JB Hunt and Family Dollar have sought and received variances from the Court for purposes of the renewed settlement conference.  (*See* DN 89, 91.)

Based on the foregoing, as well as Lethiot's production of a large number of discovery materials just before the settlement conference, the Court cannot find that the most extreme sanctions are appropriate in this case. Unlike in other cases in which entry of default has been deemed appropriate, in this case, there is no history of noncompliance with court orders or failure to make scheduled appearances.   By contrast, in *Ivan Ware*, the undersigned recommended striking answers of certain defendants and rendering default judgment against them for failure to attend a settlement conference.  *Ivan Ware* 2016 WL 8064365 at *4-5.  This recommendation was based in part on the defendants' failure to appear for pretrial conferences, including a settlement conference, but also as a result of repeated failures to obey court orders. *Id.*   The undersigned declined to recommend the same sanction against another individual defendant who failed to attend the settlement conference and instead sent his attorney to represent his interests; the Court found that such sanction would be disproportionate to the violation of failing to appear.  *Id.* at *6.

JB Hunt and Family Dollar's conduct in this case is more similar to the conduct of the defendant in *Holly*.  In that case, the defendant brought a corporate representative with a specific monetary cap on her authority.  The Court found that an award to plaintiff of his attorney's fees, costs, and expenses in relation to preparing for and participating in the settlement conference was appropriate and justified.  *Holly*, Civil Action No. 3:13-cv-980-DJH-CHL (W.D. Ky. Mar. 27, 2015), ECF No. 38 *objections overruled* 2015 WL 4776904 (W.D. Ky. Aug. 12, 2015).  Based on the foregoing, the Court finds that while JB Hunt and Family Dollar were neglectful and violated the Settlement Conference Order, entry of default judgment, dismissal of the intervening complaint, or findings that would eliminate or limit JB Hunt and Family Dollar's ability to

24

pursue their defenses and claims, respectively, would be disproportionate to their offenses under the particular circumstances of this case.

Rule 16(f) mandates that, "[i]nstead of or in addition to any other sanction, the court *must* order the party, its attorney, or both to pay the reasonable expenses -- including attorney's fees -- incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2) (emphasis added). The Court finds that it must order JB Hunt and Family Dollar to reimburse Lethiot for his reasonable expenses, including attorney's fees, associated with the failed settlement conference set for March 9, 2017. The Court further finds that JB Hunt and Family Dollar's noncompliance with the Settlement Conference Order was not substantially justified and that no other circumstances in this case would make an award unjust. The Court rejects JB Hunt's argument that Lethiot's discovery-related delays were the cause of or excused its failure to bring an insurance carrier representative to the settlement conference. As is discussed at length in this opinion, JB Hunt clearly violated the terms of the Settlement Conference Order; further, it did not seek a variance from that order. Indeed, JB Hunt's conduct in relation to the settlement conference was consistent with its failure throughout this litigation to provide Lethiot and Family Dollar with basic information regarding its insurance coverage, thereby impairing their ability to fully prepare for the settlement conference. Similarly, the Court rejects Family Dollar's argument that the Court should disregard its *two* serious violations of the Settlement Conference Order because the other parties also erred, and simply move on with the rescheduled settlement conference. To do this would be to condone Family Dollar's

25

cavalier violations of the Order and would not serve to deter similar conduct in the future of this or any other case.

Before concluding, the Court takes this opportunity to address a problem that is arising all too frequently in settlement conferences before this Court: a lack of sufficient authority. Settlement conferences provide litigants with an opportunity to meet face-to-face in an attempt to resolve their dispute and avoid the heavy costs of proceeding to trial. Additionally, settlement conferences consume a great deal of the Court's time. When parties approach a settlement conference in good faith, with all of the necessary interests represented, it is a worthy and valuable use of the Court's time. When, as here, parties disregard the orders of the Court, they waste precious Court resources. The Court often devotes the majority of or an entire day to conducting a settlement conference, and it is not unusual for the Court to continue facilitating settlement discussions after that date, or, if necessary, schedule a second conference. Even before a settlement conference convenes, the Court and its staff prepare extensively, scheduling, reviewing confidential settlement statements, researching legal issues, and managing logistics. Similarly, the parties spend a substantial amount of time preparing, drafting confidential statements, gathering information to support claims for damages or defenses, and the like. Because of the intense investment of time by the parties and the Court, it is imperative that the proper parties -- armed with sufficient authority -- attend the settlement conference.

Accordingly, the Court will order JB Hunt and Family Dollar to reimburse Lethiot for his expenses incurred in relation to the March 9, 2017 would-be settlement conference, including Lethiot's travel expenses and his attorney's fees and expenses incurred in preparation for the settlement conference, the events of March 9, 2017, and the preparation of the motion for

26

sanctions (DN 80) and reply to JB Hunt's response (DN 86).  The order for reimbursement will not cover counsel's preparation of the motion to strike Family Dollar's response (DN 88), as that motion is denied herein.  Lethiot shall file an itemized account of counsel's time and expenses, as well as Lethiot's travel expenses, including any receipts.[5]  JB Hunt and Family Dollar shall each be responsible for reimbursing Lethiot for one-half of that amount.

## ORDER

Accordingly, IT IS HEREBY ORDERED as follows:

A.  Lethiot's motion for sanctions (DN 80) is GRANTED IN PART and DENIED IN PART.

1.  The motion for sanctions (DN 80) is GRANTED insofar as it requests reimbursement of Lethiot's reasonable expenses, including attorney's fees, incurred in relation to the settlement conference set for March 9, 2017.  IT IS FURTHER ORDERED as follows:

  i.  **No later than July 31, 2017**, Lethiot shall FILE AN ITEMIZATION, reflecting attorney's fees, costs, and expenses (including Lethiot's travel expenses) incurred in preparation for the settlement conference, the events in the courthouse on March 9, 2017, and the preparation of the motion for sanctions (DN 80) and reply to JB Hunt's response (DN 86).

  ii.  **No later than August 14, 2017**, JB Hunt and Family Dollar shall REIMBURSE Lethiot for his attorney's fees, costs, and expenses as set forth

---

[5] In the interest of expediency, the Court suggests that Lethiot's counsel review two recent opinions of this Court in order to ascertain the type of information and level of detail that he should include in his itemization.  *See Shields v. Golden Corral Corp.*, Civ. Action No. 3:15-cv-371-DJH DN 34 (June 12, 2017) (memorandum opinion and order granting in part plaintiff's motion for sanctions); *Pogue v. Northwestern Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 62226 (W.D. Ky. Apr. 24, 2017) (memorandum opinion and order overruling in part plaintiff's objections to defendant's motion for attorney's fees).

in the itemization.  JB Hunt and Family Dollar shall each be responsible for ONE-HALF of the total amount.  Payment shall be made in such form as is specified by Lethiot's counsel.

iii.   JB Hunt and/or Family Dollar MAY file objections to Lethiot's itemization. Any such objections shall be filed **no later than August 14, 2017** and shall address ONLY THE REASONABLENESS of the amount sought by Lethiot. In the event that objections are filed, the PAYMENT DATE of August 14, 2017 shall be STAYED pending resolution of the objections.  In the event that no objections are filed, then **no later than August 16, 2017**, JB Hunt and Family Dollar shall file certifications of payment to Lethiot.

2. The motion for sanctions (DN 80) is DENIED insofar as it requests any other sanctions of JB Hunt or Family Dollar for their actions in conjunction with the settlement conference set for March 9, 2017.

B. IT IS FURTHER ORDERED that JB Hunt shall SUPPLEMENT ITS INITIAL DISCLOSURES and DISCOVERY RESPONSES with respect to the insurance carrier issue **no later than August 8, 2017**.  By the same date, JB Hunt shall also FILE A STATUS REPORT regarding its compliance with this portion of the order.

C. IT IS FURTHER ORDERED that **no later than August 8, 2017**, Family Dollar AND Lethiot shall FILE SEPARATE STATUS REPORTS regarding the status of their discovery responses, specifically indicating whether any discovery responses remain outstanding.

D. The parties are reminded of the full extent of sanctions available under Rules 16(f) and 37(b) for failure to comply with a pretrial order.

E.   Finally, IT IS ORDERED that Lethiot's motion to strike (DN 88) is DENIED.

cc:  Counsel of record